UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Docket No.: 08 CV 01284

TERIANNE FREEMAN,                                                                    (PKC)

Plaintiff,

-against-                                                            **COMPLAINT AND JURY
                                                                            DEMAND**

HIP HEALTH PLAN OF NEW YORK,

Defendant.

------------------------------------------------------------------------X

Plaintiff, by her attorneys, Gabor & Gabor, as and for her Complaint and Jury Demand,

respectfully alleges as follows:

## PARTIES

1.       At all times relevant hereto, plaintiff, Terianne Freeman, was and is a resident and

domiciliary of the State of New York, County of Nassau with her principal residence located at

19 Schoolhouse Lane, Syosset, New York 11791.

2.       At all times relevant hereto, defendant, HIP Health Plan of New York, is a

corporation with its principal offices located at 55 Water Street, New York, New York 10041.

## VENUE AND JURISDICTION

3.       This is a civil rights action brought by the plaintiff in order to redress multiple

deprivations by the defendant of plaintiff's rights secured by the Constitution of the State of New

York, as well as pursuant to 42 U.S.C. 2000e et seq., otherwise known as Title VII of the Civil

Rights Act of 1964, the New York State Executive Law Section 290 et. seq., the New York City

Administrative Code; and all applicable rules and regulations.

4.      Jurisdiction is conferred on the Court by 28 U.S.C. 1331 and 28 U.S.C. 1343(a) and under the doctrine of supplemental and pendent jurisdiction.   Venue in the Southern District of New York is appropriate pursuant to 28 U.S.C. 1391 inasmuch as acts and transactions constituting violations of the above Acts have occurred in this District.

5.      The plaintiff filed a complaint with the Equal Employment Opportunity Commission on June 15, 2007.

6.      The plaintiff received a Right to Sue letter dated December 27, 2007.

7.      This action has commenced within ninety (90) days of receipt of the right to sue.

8.      A copy of this federal court complaint has been served upon The New York City Commission on Human Rights and upon Corporation Counsel.

## NATURE OF THE ACTION

9.      This is an action brought for monetary damages for pain, suffering, humiliation, lost wages and other compensation.  This is also an action brought for declaratory, injunctive, equitable and affirmative relief.  Exemplary damages, counsel fees and the costs and expenses to redress the injuries caused by the acts of the Defendant are also sought.

## BACKGROUND AND FACTS

10.      The plaintiff was born on January 4, 1965, and is therefore currently forty-three (43) years of age.

11.      The plaintiff is a married female and a mother.

12.      When the plaintiff was hired by HIP in August 1999, she did not have children.

13.      From August 1999 through 2001, the plaintiff worked as the Assistant Director,

Clinical Appeals Department.

14.    In 2001, the plaintiff was promoted to Director, Medical Management Compliance and held that position until January 2003.

15.    In January 2003, the plaintiff was transferred to Director of Clinical Audits, Internal Audit Department where she was responsible to audit the medical management departments and was responsible to handle clinical related questions.

16.    On March 31, 2007, the plaintiff was given the position Director, Corporate Compliance.  Freeman's responsibilities were conducting lower level audits for the Compliance Department.

17.    At all times the plaintiff performed her duties in an exemplary fashion.

18.    In fact, the plaintiff repeatedly requested that more work be assigned to her.

19.    The plaintiff was extremely well regarded by the people she reported to and by the people that reported to her.

20.    The plaintiff's career was proceeding smoothly until she became pregnant in the Summer of 2005.

21.    One example of just how dedicated an employee the plaintiff was occurred during the New York City Transit Strike in December 2005.  She was six (6) months pregnant at the time and made it to work each day during the strike.  The plaintiff spent more than five (5) hours each day commuting to work and put in a full day while at the office.

22.    On or about March 13, 2006, the plaintiff went out on maternity leave.

23.    For the first eight (8) weeks of maternity leave, the plaintiff used sick time and vacation time.

24.    The plaintiff was not paid for the remaining seven and a half months that she was on leave.  The leave that the plaintiff utilized was in accordance with company policy.

25.    The plaintiff gave birth to her daughter on March 17, 2006.

26.    During the Summer of 2006, the plaintiff called Kevin Tighe, the Managing Director, and advised him that she would be coming back to work on January 2, 2007.

27.    During that conversation, the plaintiff requested that she be allowed to change her regular hours from 9:00 a.m. to 5:00 p.m. to 8:00 a.m. to 4:00 p.m.  Tighe said that he would think about it and call her back.

28.    Tighe called the plaintiff back and said that he discussed it with Valerie Reardon, the Senior Vice President and decided that the plaintiff could not change her hours. Reardon is married and does not have children.

29.    On January 2, 2007, the plaintiff returned to work as the Director of Clinical Audits, Internal Audit Department.

30.    The plaintiff continued to perform her duties in an exemplary fashion.

31.    Prior to going on maternity leave the plaintiff was responsible for bid openings. Upon her return from leave that function was taken away from her.  The function was assigned to Mary Cripps, a female with no children.  The plaintiff requested the function be returned to her to no avail.

32.    On March 31, 2007, the plaintiff was transferred from Internal Audit to Corporate Compliance by Kevin Tighe and Valerie Reardon.

33.    Tighe told the plaintiff that she should consider changing to medical management. It was clear that he was trying to get rid of the plaintiff.

34.     This transfer was humiliating because the plaintiff felt that it was punitive.

35.     During the nearly eight (8) years that the plaintiff had worked for the defendant, she had received very good evaluations and felt that she was a valued and respected member of the team.

36.     The plaintiff was only back to work from maternity leave for three (3) months and to be transferred out of her department in so short a time was extremely frustrating.

37.     The plaintiff reported to Corporate Compliance on April 1, 2007.

38.     On April 17, 2007, the plaintiff used a sick day due to her daughter's illness.

39.     On April 17, 2007, Kevin Tighe sent a memo to Diane McGuire, Assistant Director, Human Resources, regarding the plaintiff's absences and her work product.  The plaintiff submitted a written response.

40.     Tighe was no longer the plaintiff's managing director and would have no reason to complain about her work performance or her attendance.

41.     On April 18, 2007, the plaintiff's thirteen (13) month old daughter touched a hot pipe in their bathroom and was brought to the emergency room with 2nd degree burns to her hand. The plaintiff was afraid to call in sick the next morning for fear of being fired.  The plaintiff went to work.

42.     On April 19, 2007, the plaintiff learned that a meeting was scheduled for April 27, 2007 to discuss her "HR" issues. The plaintiff did not know who scheduled the meeting and also did not know what was meant by "HR" issues.

43.     On April 27, 2007, at 11:00 a.m., the plaintiff attended a meeting in Reardon's office along with Reardon, Tighe, Heimann and Kreiswirth.  Heimann is a Managing Director

and Kreiswirth is the Project Manager, Human Resources.

44.    Reardon opened the meeting and held up the plaintiff's April 19th memo with two fingers and called the plaintiff a "liar" and stated that the memo made her "angry" because HIP is in fact "family friendly".

45.    Tighe then discussed the plaintiff's husband's eye surgery in 2005 and how he had allowed the plaintiff to take time off.  In fact, she used three (3) vacation days for her husband's first surgery and two (2) family sick days and one (1) personal day for his second surgery.  The time that she used was consistent with established policy at HIP.

46.    Reardon raised her voice and angrily stood up on three (3) separate occasions during the meeting.

47.    On one occasion, Reardon stood, leaned towards the plaintiff, raised her voice and called the plaintiff "selfish" for not being grateful to Tony Watson, Chairman and Chief Executive Officer.  Reardon told the plaintiff that the company was headed for a great future and that the plaintiff should be "grateful instead of so selfish!"  Reardon told the plaintiff,  "You're selfish, that's what you are, you're selfish!"

48.    Reardon told the plaintiff, "If you want to be a working mother you have to understand this is the way it is!"

49.    Reardon then turned to Kreiswirth and said, "I want to know right now what she wants to do!" Kreiswirth said, "Can she at least have until Monday?"

50.    The plaintiff became extremely scared and wanted to speak with her husband. The plaintiff said, "I will let you know at 5 o'clock."

51.    Heimann had remained quiet during the entire meeting. Reardon then pointed to

Heimann and asked her to speak. Heimann said, "I heard Teri say, and I was shocked when I heard this, that she is going to tell Dan McGowan, that HIP is family unfriendly." McGowan is President and Chief Operating Officer.

52.     The plaintiff had in fact said that over the telephone during a private conversation with her husband. She never said that to Heimann or anyone else at HIP.

53.     After Heimann's statement, Reardon hit her chest with her hand, became visibly angry and said, "I never heard this before!" and demanded to know if this was, "a threat", "a personal attack on her."

54.     Reardon said to Kreiswirth, "I want to know right now what she wants to do!"

55.     Based upon the tone of the meeting, the threats, the menacing gestures and the manner in which the plaintiff was being treated, she felt that she could no longer work for the defendant.

56.     As a result, the plaintiff felt compelled to resign from her employment on the spot.

57.     The plaintiff was constructively discharged on April 27, 2007.

58.     The plaintiff became so upset that she started to cry.

59.     At approximately 12pm on April 27, 2007, the plaintiff called Kreiswirth from her cell phone and told her that she wanted to rescind her resignation, that she was harassed into it and that if Reardon wanted the plaintiff to leave she would have to fire the plaintiff. Kreiswirth said that she "is new at this" and would talk to her boss, Diane McGuire. She called the plaintiff back and said McGuire said that the plaintiff's verbal resignation was enough.

60.     The manner in which the plaintiff was treated caused her to suffer severe emotional and economic injury.

**AS AND FOR A FIRST CAUSE OF ACTION**
**TITLE VII - GENDER - HOSTILE WORK ENVIRONMENT**
**AND DISPARATE TREATMENT**

61.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "60" with the same force and affect as if more fully set forth herein.

62.    The defendant has discriminated against the plaintiff on the basis of plaintiff's

gender and the fact that she had a young child at home.

63.    The plaintiff was subjected to a hostile work environment which manifested itself

in comments, actions, threats and denial of career advancement.

64.    The plaintiff was treated in a disparate manner.

65.    The plaintiff was denied equal opportunities as compared to male employees and

female employees who did not have children.

66.    The treatment of the plaintiff was so severe and pervasive as to alter the terms and

conditions of the plaintiff's employment.

67.    The plaintiff was forced out of her position with the defendant.

68.    At all relevant times the plaintiff performed her duties in a satisfactory manner.

69.    The hostile work environment was unwanted and unwelcome by the plaintiff.

70.    An ordinary person would have found that the manner in which the plaintiff was

treated was unreasonable.

71.    The plaintiff has been caused to suffer severe emotional and economic damages as

a result of this conduct.

72.    The defendant has discriminated against the plaintiff with respect to her

employment terms, working conditions and privileges of employment in violation of Title VII of

the Civil Rights Act of 1964.

73.     But for the plaintiff's gender and the fact that she had a child, the plaintiff would

not have been subjected to a hostile work environment.

74.     As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.


### AS AND FOR A SECOND CAUSE OF ACTION
### NEW YORK STATE EXECUTIVE LAW § 296 - GENDER -
### HOSTILE ENVIRONMENT AND DISPARATE TREATMENT

75.     The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "74" with the same force and affect as if more fully set forth herein.

76.     The defendant has discriminated against the plaintiff on the basis of plaintiff's

gender and the fact that she was the mother of a young child.

77.     The plaintiff was subjected to a hostile work environment which manifested itself

in comments, actions and denial of career advancement.

78.     The plaintiff was subjected to severe and pervasive hostility.

79.     The plaintiff was treated in a disparate manner as compared to male employees

and female employees who did not have children..

80.     The treatment of the plaintiff was so severe and pervasive as to alter the terms and

conditions of the plaintiff's employment.

81.     The plaintiff was forced out of her position with the defendant.

82.     At all relevant times the plaintiff performed her duties in a satisfactory manner.

83.     The hostile work environment was unwanted and unwelcome by the plaintiff.

9

84.    An ordinary person would have found that the manner in which the plaintiff was treated was unreasonable.

85.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

86.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of New York Executive Law § 296 et seq.

87.    But for the plaintiff's gender and the fact that she had a child, the plaintiff would not have been subjected to a hostile work environment.

88.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR A THIRD CAUSE OF ACTION**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107 - GENDER -**
**HOSTILE ENVIRONMENT AND DISPARATE TREATMENT**

89.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "88" with the same force and affect as if more fully set forth herein.

90.    The defendant has discriminated against the plaintiff on the basis of plaintiff's gender and the fact that she was the mother of a young child.

91.    The plaintiff was subjected to a hostile work environment which manifested itself in comments, actions and denial of career advancement.

92.    The plaintiff was subjected to severe and pervasive hostility.

93.    The plaintiff was treated in a disparate manner as compared to male employees and female employees who did not have children..

94.     The treatment of the plaintiff was so severe and pervasive as to alter the terms and conditions of the plaintiff's employment.

95.     The plaintiff was forced out of her position with the defendant.

96.     At all relevant times the plaintiff performed her duties in a satisfactory manner.

97.     The hostile work environment was unwanted and unwelcome by the plaintiff.

98.     An ordinary person would have found that the manner in which the plaintiff was treated was unreasonable.

99.     The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

100.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of New York City Administrative Code § 8-107 et seq.

101.    But for the plaintiff's gender and the fact that she had a child, the plaintiff would not have been subjected to a hostile work environment.

102.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION
### IN VIOLATION OF TITLE VII - RETALIATION-HOSTILE ENVIRONMENT AND DISPARATE TREATMENT

103.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "104" with the same force and effect as if set forth more fully herein.

104.    A motivating factor for this adverse employment action was the plaintiff's complaints of discrimination.

105.    The defendant's conduct was calculated to cause the plaintiff to quit her employment with HIP.

106.    The defendant has wilfully discriminated against the plaintiff with respect to the conditions of the plaintiff's employment.

107.    But for plaintiff's complaints of discrimination, she would not have been the victim of this discrimination.

108.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**IN VIOLATION OF NEW YORK STATE EXECUTIVE LAW § 296  - RETALIATION**

109.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "108" with the same force and effect as if set forth more fully herein.

110.    A motivating factor for this adverse employment action was the plaintiff's complaints of discrimination.

111.    The defendant's conduct was calculated to cause the plaintiff to quit her employment with HIP.

112.    The defendant has wilfully discriminated against the plaintiff with respect to the conditions of the plaintiff's employment.

113.    But for plaintiff's complaints of discrimination, she would not have been the victim of this discrimination.

114.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE

MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION
## IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107 - RETALIATION

115.    Plaintiff repeats, reiterates and realleges each of the allegations contained in

paragraphs "1" through "114" with the same force and effect as if set forth more fully herein.

116.    A motivating factor for this adverse employment action was the plaintiff's

complaints of discrimination.

117.    The defendant's conduct was calculated to cause the plaintiff to quit her

employment with HIP.

118.    The defendant has wilfully discriminated against the plaintiff with respect to the

conditions of the plaintiff's employment.

119.    But for plaintiff's complaints of discrimination, she would not have been the

victim of this discrimination.

120.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE

MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII

121.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "120" with the same force and affect as if more fully set forth herein.

122.    The defendant has discriminated against the plaintiff on the basis of plaintiff's

gender and the fact that she has a child.

123.    The plaintiff is female and has one (1) child.

124.    The defendant was aware of these facts.

125.    The defendant wanted to force the plaintiff to stop working for HIP.

126.    The defendant wantonly and deliberately altered the terms of the plaintiff's

employment by transferring her to a different department three (3) months after her return from

maternity leave.

127.    The defendant has discriminated against the plaintiff with respect to her

employment terms, working conditions and privileges of employment in violation of Title VII of

the Civil Rights Act of 1964.

128.    The terms and conditions of plaintiff's employment became so unbearable that an

ordinary person in the plaintiff's position would have felt compelled to resign her employment.

129.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR AN EIGHTH CAUSE OF ACTION
CONSTRUCTIVE DISCHARGE IN VIOLATION OF
NEW YORK EXECUTIVE LAW § 296**

130.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "129" with the same force and affect as if more fully set forth herein.

131.    The defendant has discriminated against the plaintiff on the basis of plaintiff's

gender and the fact that she has a child.

132.    The defendant essentially terminated the plaintiff from her employment due to her

gender and the fact that she has a child.

133.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

134.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of New York State Executive Law § 296 et seq.

135.    The terms and conditions of plaintiff's employment became so unbearable that an ordinary person in the plaintiff's position would have felt compelled to resign her employment.

136.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR A NINTH CAUSE OF ACTION**
**CONSTRUCTIVE DISCHARGE IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107**

137.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "136" with the same force and affect as if more fully set forth herein.

138.    The defendant has discriminated against the plaintiff on the basis of plaintiff's gender and the fact that she has a child.

139.    The defendant essentially terminated the plaintiff from her employment due to her gender and the fact that she has a child.

140.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

141.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of New York City Administrative Code § 8-107 et seq.

142.    The terms and conditions of plaintiff's employment became so unbearable that an

ordinary person in the plaintiff's position would have felt compelled to resign her employment.

143.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR AN TENTH CAUSE OF ACTION
## IN VIOLATION OF TITLE VII - RETALIATION

144.    Plaintiff repeats, reiterates and realleges each of the allegations contained in

paragraphs "1" through "143" with the same force and effect as if set forth more fully herein.

145.    A motivating factor for this adverse employment action was the plaintiff's

complaints of discrimination.

146.    The defendant's conduct was calculated to cause the plaintiff to quit her

employment with HIP.  The defendant wantonly and deliberately altered the terms of the

plaintiff's employment and transferred her out of her department within three (3) months of when

she returned from maternity leave.

147.    The defendant has wilfully discriminated against the plaintiff with respect to the

conditions of the plaintiff's employment.

148.    But for plaintiff's complaints of discrimination, she would not have been the

victim of this discrimination.

149.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE

MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## IN VIOLATION OF NEW YORK STATE EXECUTIVE LAW § 296  - RETALIATION

150.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "149" with the same force and effect as if set forth more fully herein.

151.    A motivating factor for this adverse employment action was the plaintiff's complaints of discrimination.

152.    The defendant's conduct was calculated to cause the plaintiff to quit her employment with HIP.  The defendant wantonly and deliberately altered the terms of the plaintiff's employment and transferred her out of her department within three (3) months of when she returned from maternity leave.

153.    The defendant has wilfully discriminated against the plaintiff with respect to the conditions of the plaintiff's employment.

154.    But for plaintiff's complaints of discrimination case, she would not have been the victim of this discrimination.

155.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107 - RETALIATION

156.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "155" with the same force and effect as if set forth more fully herein.

157.    A motivating factor for this adverse employment action was the plaintiff's complaints of discrimination.

158.    The defendant's conduct was calculated to cause the plaintiff to quit her

employment with HIP. The defendant wantonly and deliberately altered the terms of the

plaintiff's employment and transferred her out of her department within three (3) months of when

she returned from maternity leave.

159.    The defendant has wilfully discriminated against the plaintiff with respect to the

conditions of the plaintiff's employment.

160.    But for plaintiff's complaints of discrimination, she would not have been the

victim of this discrimination.

161.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS together with punitive damages in the sum of FIVE

MILLION ($5,000,000.00) DOLLARS.

**JURY DEMAND**

162.    Plaintiff demands a jury trial of this action.

**WHEREFORE**, Plaintiff demands judgment as follows:

a)      Declaring that the actions, patterns and practices of the defendant, its agents,

servants and all those acting in concert with them, constituted, and does constitute, a violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.; as amended, the Civil

Rights Act of 1991 (Pub. L. 102-166); the New York State Constitution; the New York State

Executive Law Section 290 et seq.; the New York City Administrative Code § 8-107 et seq., and

all applicable rules and regulations, and common law principals.

b)      Permanently enjoining the defendant, its agents, servants and all those acting in

concert with them, from violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section

2000e et seq.; as amended, the Civil Rights Act of 1991 (Pub. L. 102-166); the New York State

Constitution; the New York State Executive Law Section 290 et seq.; the New York City

Administrative Code § 8-107 et seq., and all applicable rules and regulations, and common law

principals.

      c)     Awarding damages for economic and emotional injuries as well as interest, costs,

disbursements, common law, statutory, compensatory, exemplary and punitive damages, pre-

judgment interest, pecuniary and non-pecuniary damages and such other and further relief as to

this Court deems just and proper; and

      d)     Awarding counsel fees, costs and disbursements of this action.

Dated: Garden City, New York
       February 7, 2008


                            Yours etc.,



                            _____

                            DAVID G. GABOR (DGG 9979)
                            GABOR & GABOR
                            Attorneys for Plaintiff
                            400 Garden City Plaza
                            Suite 406
                            Garden City, New York 11530
                            (516) 248-2525